## REESE et al. v. BACON.

No. 2425.

Court of Civil Appeals of Texas. Eastland.

Dec. 3, 1943.

Rehearing Denied Jan. 14, 1944.

Scarborough, Yates & Scarborough, of Abilene, for appellants.

Smith & Eplen, of Abilene, for appellee.

FUNDERBURK, Justice.

C. W. Bacon (who conducted a business in the name of Bacon Securities Company) brought this suit against T. G. Hurst, Beula Reese and her husband, Dee Reese, to establish an alleged indebtedness due plaintiff by T. G. Hurst upon a promissory note and to establish and foreclose, as against all the defendants, a chattel mortgage lien upon an automobile given to 'secure said note.

It was alleged as to T. G. Hurst that he was "a non-resident of Texas" and that his "whereabouts are unknown." The note was for the original principal sum of $576, payable in eighteen monthly installments of $32 each, and credits were acknowledged in the total sum of $279, the last acknowledged payment of an installment being $32 due June 28, 1941. The indebtedness sought to be established included interest at 10 per cent per annum after maturity of each installment, and the note provided for 15 per cent of principal and interest as attorney's fees.

It was alleged that the automobile was in the possession of defendants, Beula Reese and Dee Reese, who claimed the right to use the car under authority given by defendant T. G. Hurst. As to the Reeses, plaintiff alleged that "they have refused to deliver the possession thereof [i.e. of the automobile] to the Plaintiff or to make any payments thereon, stating that the Defendant T. G. Hurst is in the army and that they have a right under the permission of the Defendant Hurst to use said car if and when they see fit, and that they did not have to make any payments upon said obligation."

There were allegations to the effect that continued use of the car by the Reeses would destroy the value of its security for the debt sought to be established.

No personal judgment for the debt was sought. Part of the prayer for relief was "for an order of sale [of the automobile]". Citation to Hurst was by publication issued upon the basis of an affidavit that he was "a non-resident of the State", and that "his residence outside the State of Texas is unknown." The court appointed an attorney ad litem to represent Hurst, who answered, among other things, by allegations that Hurst was in the armed forces of the United States, stationed overseas; that the suit was filed after he entered such services, and that the court had no jurisdiction to do anything except enter an order staying all proceedings. Said answer also contested the jurisdiction of the court on the grounds of the absence of service upon Hurst.

In a non-jury trial the court, after overruling the pleas to the jurisdiction and in abatement, gave judgment for plaintiff, establishing the balance of indebtedness due at $297 and awarding a conditional foreclosure of the mortgage lien and order of sale, the condition being that the automobile was returned under the obligation of a replevy bond made by the defendants Beula and Dee Reese; otherwise, a judgment upon said bond was awarded against the Reeses and sureties on their bond in the sum of $297, plus costs (not to exceed the sum of $500.) The defendants have appealed.

Appellants predicate the appeal upon two or three points, (depending upon whether the first and the second are really two, or only one stated in two different ways) as follows:

"I. The trial court erred in not staying all proceedings and continuing the cause on the application of Mrs. Reese, mother of defendant Hurst, who it appeared was over seas in military service and handicapped thereby in his defense of the suit.

"II. The trial court erred in entering judgment and in failing to stay all proceedings because that the principal defendant, Hurst, was overseas in military service, which thereby affected his ability to comply with the debt and mortgage sued upon.

"III. The Court had no jurisdiction over defendant Hurst on a citation by publication applied for on the ground of non-residence, the said Hurst not having lost his residence in Texas by reason of military service."

Generally speaking the Soldiers' and Sailors' Civil Relief Act, Title 50, §§ 510, 521, 523, and 531, U.S.C.A.Appendix is relied upon as showing error in the action

of the court below raised by Points 1 and 2 above quoted.

The basis of the judgment, limited, of course by the pleadings, consists of the conclusions of fact, which upon request were (with conclusions of law) filed by the trial judge. These conclusions, or findings of fact, include the fact and amount of indebtedness due by Hurst to plaintiff upon said note; the existence of the chattel mortgage lien on the automobile given to secure said indebtedness as part of the purchase price thereof; that Hurst, without the consent of plaintiff, had taken the car to California and thereafter plaintiff was unable to locate it until finally it was ascertained from relatives of Hurst to be in Corpus Christi, Texas, in the possession of defendant Beula Reese, who, upon demand of her for the possession or payment of the installments due, refused both and stated that she could use the car as she desired, and that, because her son was in the army, she did not have to make any payments. One of the findings was "that

the constant use of said car depreciates same and to permit said use without making any payments will ultimately deprive Plaintiff of the only means of realizing upon said note * * * *More than one-half of said note has not been paid,* and said collateral is worth approximately the amount of said note and court costs. The court specially finds that said car is worth more now than it will ever be again, and it is to the best interest of *all parties* that it be sold now as provided by law." (Italics ours.)

Appellee makes no attack in any respect upon the validity of the Soldiers' and Sailors' Civil Relief Act, and we proceed under the assumption of the validity of said act in all respects material to the questions presented.[1]

 The only bearing, if any, Section 510 of said Act can have which is material in the present case, is the declaration of purpose that the "following provisions [of the Act] are made for the *temporary*

---

[1] In this writer's individual opinion the act should be held to be void on the ground, among possibly others, that its necessary effect is to give the judge or court the power to nullify any provision of the statute by arbitrary determination to do so. In a government of laws, such as ours is supposed to be, a statute is not a law in the true sense if the judge, or any other agency of government, may, by a simple exercise of his will, nullify any of its provisions as applied to any particular case. In this statute any of its provisions, except, of course, those otherwise expressly limiting its operation, may be nullified by an "opinion". The basis of the opinion is not prescribed. If, for example, the judge, as spokesman for the court, says that, in his opinion, "the ability of * * * the defendant to conduct his defense is not materially affected by reason of his military service", or that "the ability of the defendant to comply with the judgment or order entered or sought is not materially affected by reason of his military service", or that "the ability of the defendant to comply with the terms of the contract is not materially affected by reason of such service", such professed opinion as a practical matter is conclusive of the purported rights of both the plaintiff and the defendant. In practical effect the judge makes the law of the case, and it is not necessarily the law of any other case. In my opinion, there can be no practical

or just revision of the judgment in such a case, for that would only involve one judge or set of judges substituting his or their opinion for that of the other, the basis of neither opinion being prescribed. Such basis not being prescribed, neither opinion would necessarily rest upon the same foundation.

This writer believes with the Missouri judge that "The most odious and dangerous of all laws would be those depending upon the discretion of judges." State v. Cummings, 36 Mo. 263. The reason for this belief was well stated by Lord Camden in words as follows: "The discretion of a judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends upon constitution, temper and passion. At best it is oftentimes caprice; in the worst, it is every vice, folly and passion to which human nature can be liable."

A law depending upon the discretion of judges in practical effect creates no legal rights. Legal rights constitute the foundation of freedom—the true end, as I believe, of all government. "Freedom of men under government," says John Locke, "is to have a standing rule to live by, common to everyone of that society, and made by the legislative power vested in it; a liberty to follow my own will in all things when the rule prescribes not, and not be subject to the inconstant, uncertain, unknown arbitrary will of another man."

suspension of legal proceedings and transactions which may prejudice the *civil rights* of persons in such service during the period herein specified over which this Act remains in force." (Italics ours.) Any effect which Section 521 can have to vary the otherwise existing rights of the parties is expressly denied if "in the opinion of the court, the ability of \* \* \* the defendant to conduct his defense is not materially affected by reason of his military service." Similarly, the effect of Section 523 is denied if, "in the opinion of the court the ability of the defendant to comply with the judgment or order entered or sought is not materially affected by reason of his military service." In the same way, any rights the defendant Hurst may have under Section 531 are denied if, "in the opinion of the court, the ability of the defendant to comply with the terms of the contract is not materially affected by reason of such service."

The effect of the court's findings, not herein challenged by any of the points upon which the appeal is predicated, is that long before Hurst's induction into the armed forces he had ceased to pay the installments on his note, had wrongfully taken the car,—the only security for the note,—out of the state without the consent of the mortgagee, and that when it was found it was in the possession of his mother in Corpus Christi, Texas, who was using it so as not merely to impair, but destroy, plaintiff's only security for payment of the note. The findings are to the effect that Hurst had no equity in the automobile. Further, the findings, in our opinion, constitute the several opinions of the court which the act expressly provides shall render its provisions inapplicable to a case like this. The record reflects the opinion of the court that Hurst had no "civil rights" to be prejudiced; that his ability to conduct his defense could not be materially affected, since it affirmatively appeared that he had no defense; that his ability to comply with the judgment was not affected, since no personal recovery was sought or granted, and the effect of the judgment was to appropriate the automobile, in which Hurst had no equity, to the payment of the debt; that the ability of Hurst to comply with the terms of the contract was not materially affected by his service in the army, since his non-compliance had begun so long before his induction into the service as to justify the belief that the latter was not the cause of such inability, if any.

In our opinion, the judgment of the court finds support for a reason which, though not urged, is, we think, nevertheless available independently of the sections of the act relied upon by appellants. Another section, being section 533, is special. That is to say, it controls over the provisions of said other sections when the proceeding is one for an order of sale of a motor vehicle encumbered by a purchase-money mortgage. This provision prohibits any such stay of proceeding, "unless the court shall find that 50 per centum or more of the purchase price of said property has been paid." No good reason occurs to us why the present action does not fall within such provision, and all the facts are present, including, as found by the court, that less than 50 per cent of the purchase price had been paid.

The third point, while perhaps good as an abstract proposition, assumes an essential fact not shown by the record to have been conclusively established, namely, that Hurst was a resident of Texas when he entered the military service of the United States. If it appeared conclusively that he resided at some place in Texas at the time he was inducted into the military service, it would be presumed, in the absence of any evidence to the contrary, that he remained a resident of Texas while in such service, even though temporarily stationed overseas. Therwhanger v. Therwhanger, Tex.Civ.App., 175 S.W. 2d 704.

The fact not appearing that Hurst was a resident of Texas, it further, of course, does not appear that he was not a non-resident, or had an unknown place of residence outside the state. If it had been made to appear conclusively by aid of the presumption aforesaid that he was a resident of the State, then it may be conceded that the service relied upon would have been insufficient, since he having no residence outside of the State of Texas, jurisdiction would not have been conferred by a citation by publication based upon affidavit that his residence outside of the State of Texas is unknown. In other words, it would not follow that his true residence in Texas was unknown.

It is our conclusion upon the whole that no reversible error is shown, and that the judgment of the court below should be affirmed. It is accordingly so ordered.